**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EFOFEX, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> REALHUB INC. *et al.*, <br><br> Defendants. | Civil Action No. 21-8454 (MAS) (TJB) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This matter comes before the Court on Defendants Datta Holdings, LLC ("Datta") and Sarange Sam Sharma's ("Sharma," and, together with Datta, "Defendants") Motion to Dismiss Plaintiffs Efofex, Inc. ("Efofex") and Textrade Inc.'s ("Textrade," and together with Efofex, "Plaintiffs") Complaint. (ECF No. 12.) Plaintiffs opposed and sought leave to amend (ECF No. 15), and Defendants did not reply. The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Defendants' Motion.

**I.    BACKGROUND**

    This matter arises out of the widely publicized rash of counterfeit 3M N95 masks manufactured during the COVID-19 pandemic. Throughout the latter half of 2020, Efofex agreed to provide the State of Maine with 1,025,000 3M N95 masks. (Compl. ¶¶ 22, 28, ECF No. 1.) To fulfill that order, Efofex contracted with Defendant Realhub Inc. ("Realhub") to purchase masks. (*Id.* ¶¶ 24, 29.) The resulting set of contracts dictated that, although Efofex placed and paid for the

orders, Realhub would deliver the masks to a warehouse in Dayton, New Jersey, operated by Textrade. (*Id.* ¶¶ 23, 26, 32.) For its part, to fulfill Efofex's purchase orders, Realhub worked with Defendant Aster Impact ("Aster"), which connected Realhub with Datta, an importer of 3M N95 masks. (*Id.* ¶ 61.) Realhub ultimately contracted with Datta to import masks. (*Id.*)

Not all went according to plan. *First*, although the parties agreed that Realhub would deliver 650,000 3M N95 masks to the New Jersey warehouse by December 28, 2020, Realhub did not meet those obligations. (*Id.* ¶¶ 43-49.) According to Plaintiffs, by February 4, 2021, Efofex had received only 450,480 3M N95 masks from Realhub, of which Efofex sent about 350,000 to the State of Maine. (*Id.* ¶¶ 46, 48.) *Second*, although the parties' contracts certified that Realhub would send genuine 3M N95 masks, mounting evidence suggested that the masks were not manufactured by 3M. (*Id.* ¶¶ 25, 30.) Specifically, according to Plaintiffs, in early February 2021, 3M issued a "Safety Notice," which warned that certain N95 masks (including the ones dispatched to the State of Maine) were counterfeit. (*Id.* ¶¶ 51-53.)

The counterfeit concerns came to a head on February 8, 2021, when Plaintiffs convened a conference call that included representatives from Realhub, Datta, Aster, and the State of Maine. (*Id.* ¶¶ 59-60.) On that call, Plaintiffs allege that William Holden ("Holden"), for the State of Maine, requested that the callers identify the authorized 3M distributor of the 3M N95 masks. (*Id.* ¶ 62.) Representing Datta, Sharma answered that the authorized distributor was "MSC Industrial Supply" and that he would provide documents authenticating that distributor's authorized status. (*Id.* ¶¶ 64-65.) Holden then instructed the callers that the State of Maine required sufficient documents demonstrating that the 3M N95 masks originated from an authorized 3M distributor. (*Id.* ¶ 66.) According to Plaintiffs, no one provided them or the State of Maine with those documents. (*Id.* ¶¶ 67, 71.)

Against that backdrop, Plaintiffs sued Realhub, Datta, Aster, and their associated principals. (*See generally* Compl.) As to Defendants Datta and Sharma, Plaintiffs' Complaint asserts claims for fraud, unjust enrichment, and tortious interference with economic advantage. (*See id.*) The instant Motion ensued, in which Defendants assert that the Court lacks personal jurisdiction over them under Federal Rule of Civil Procedure 12(b)(2)[1] and that Plaintiffs fail to state actionable fraud and unjust enrichment claims under Rule 12(b)(6). (*See* Defs.' Moving Br., ECF No. 12-1.) Plaintiffs opposed, asserting that they adequately alleged personal jurisdiction over Defendants, that the Court should alternatively order jurisdictional discovery, and that they adequately alleged fraud and unjust enrichment claims. (*See* Pls.' Opp'n Br., ECF No. 15-1.)

## II.  LEGAL STANDARD

### A.  Rule 12(b)(2)

Under Rule 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. "[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (second alteration in original) (internal quotation marks and citations omitted). In a diversity action, a New Jersey federal court "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citations omitted). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Id.* (citation omitted).

---

[1] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

A federal district court may exercise two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 & n.9 (1984)). General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home' are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler*, 571 U.S. at 137). Specific jurisdiction allows a court to exercise jurisdiction over a non-resident defendant where: (1) the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum"; (2) the litigation "aris[es] out of or relate[s] to the defendant's contacts with the forum"; and (3) the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Goodyear*, 564 U.S. at 923-24 (alterations in original) (citations omitted).

When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citations omitted). Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable. *See Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

**B.     Rule 12(b)(6)**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and

4

the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III.  DISCUSSION

The Court begins by assessing whether it can exercise personal jurisdiction over Defendants. *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017) ("A court must have . . . power over the parties before it (personal jurisdiction) before it can resolve a case." (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-85 (1999))). Neither party argues the Court may exercise general jurisdiction over Defendants, so the Court focuses exclusively on whether it has specific jurisdiction.

### A. The Court Lacks Personal Jurisdiction Over Defendants.

To assert specific personal jurisdiction, Plaintiffs must allege "claim-specific jurisdiction over Defendants," meaning "an affiliatio[n] between the forum and the underlying controversy." *Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 499 (D.N.J. 2017) (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)). Plaintiffs allege a quasi-contractual claim, unjust enrichment, and two tort claims, fraud and tortious interference, against Defendants. Because specific jurisdiction analysis is claim-specific, the Court analyzes the contract and tort claims separately. *See Remick v. Manfredy*, 238 F.3d 248, 256-60 (3d Cir. 2001).

Both claims have different analyses. For claims like unjust enrichment, courts employ the traditional three-part test for specific jurisdiction outlined above:

> First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

*Harrison v. Nerveda, LLC*, No. 15-1373, 2015 WL 5138478, at *4 (D.N.J. Aug. 31, 2015) (first quoting *HS Real Co., LLC v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013); then citing *O'Connor*, 496 F.3d at 317). Notably, the first prong is a threshold inquiry, and the Court need not consider the third prong if the first two prongs are unmet. *See Bit Holdings Fifty-One, Inc. v. Ultimate Franchises, Inc.*, No. 18-11010, 2019 WL 2296052, at *4 (D.N.J. May 30, 2019) (citation omitted). For intentional tort claims like fraud and tortious interference, the Court employs the "*Calder* effects test," which stems from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 788 (1984). *See Christie*, 258 F. Supp. 3d at 500. That test requires a plaintiff to allege as follows:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]

6

> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity . . . .

*Id.* (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)). Further, the Supreme Court has clarified that for the second and third prongs of the *Calder* effects test, the inquiry must focus on "whether the defendant's conduct connects [it] to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

With the proper standards in place, the Court analyzes the connection between the forum and Plaintiffs' unjust enrichment and intentional tort claims. The Court concludes that it cannot exercise personal jurisdiction over Defendants for any claim.

1. *Unjust Enrichment Claim*

Regarding Plaintiffs' unjust enrichment claim, the Court finds that Plaintiffs have not met their burden under the first prong of the test—purposeful availment. Purposeful availment requires allegations that Defendants "purposefully directed their activities" at New Jersey. *Christie*, 258 F. Supp. 3d at 500 (alteration and citation omitted). In addition, because Plaintiffs' unjust enrichment claim stems from Realhub's breach of contract, the Court considers "'prior negotiations' and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Harrison*, 2015 WL 5138478, at *5 (quoting *Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 168 (3d Cir. 2012)). Here, Plaintiffs' Complaint fails to allege any activities by Defendants purposefully directed at New Jersey. The Complaint suggests that Realhub, a Connecticut company, contracted with Datta, a Florida company, to import 3M N95 masks from abroad. (*See* Compl. ¶¶ 3-4, 61.) It does not allege that Datta or Sharma contracted with Textrade—the only New Jersey-based party in this litigation—or even knew about Textrade's existence. Indeed, as Defendants point out, Plaintiffs' Complaint does not allege that Datta supplied masks directly to Textrade. (*See* Defs.' Moving Br. 4 ("[A]ll of the goods at issue in this

matter were shipped to New Jersey not by Defendants but by Realhub, Inc . . . .").) Rather, Datta supplied masks *to Realhub*, which then shipped those masks to New Jersey. (*See* Compl. ¶¶ 23, 26, 32.) Thus, nothing in Plaintiffs' Complaint shows that either Datta or Sharma purposefully directed their activities at New Jersey.[2]

Similarly, although Plaintiffs attach to their Complaint several exhibits showing e-mail message exchanges and contracts, none of these exhibits show any negotiations, contracts, or course of dealings between Plaintiffs and Defendants. At best, one exhibit shows that Defendant Steve Chainani from Realhub forwarded an e-mail message from Sharma to a representative from Textrade. (*See* Compl., Ex. L, ECF No. 1-12.) But one forwarded e-mail message is far from showing that Defendants purposefully directed their contacts at New Jersey—much less had any pre-existing relationship with Plaintiffs. *See Kettering Adventist Healthcare v. Jade Designs, LLC*, No. 21-136, 2021 WL 4844082, at *5 (S.D. Ohio Oct. 18, 2021) (finding purposeful availment where N95 mask supplier had multiple communications with N95 mask buyer and "actively sought to establish a connection with [N95 mask buyer] that would be more than a 'one-shot affair.'" (citation omitted)). Indeed, Plaintiffs' Complaint does not allege e-mail messages, correspondence, or phone calls from Defendants directed at New Jersey, or any facts evincing Defendants' intent to take advantage of the laws of New Jersey. The Court thus declines to exercise personal jurisdiction over Defendants for the unjust enrichment claim.

---

[2] The Court further notes that Plaintiffs' theory of specific jurisdiction appears to run afoul of guidance from the Supreme Court that suggests that courts cannot base jurisdiction on the stream of commerce. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877-85 (2011) (plurality opinion); *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 108-13 (1987) (plurality opinion); *cf. Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1783 (2017) ("The bare fact that [a non-resident defendant] contracted with a [resident] distributor is not enough to establish personal jurisdiction in the State.").

### 2. *Intentional Tort Claims*

The Court reaches the same conclusion regarding Plaintiffs' intentional tort claims. Simply put, Plaintiffs' Complaint fails to allege any torts targeting New Jersey. According to Plaintiffs, Defendants harmed Plaintiffs' business opportunities in Maine by misrepresenting the genuine status of their 3M N95 masks on the February 8, 2021 phone call and by subsequently failing to provide documents authenticating that MSC Industrial Supply was an approved 3M distributor. (Compl. ¶¶ 104, 110, 128-29.) Notably, Plaintiffs clarify that they "allege that the Moving Defendants' fraudulent representations damaged the Plaintiffs' business relationship with the State of Maine." (Pls.' Opp'n Br. 12 (citation omitted).) So, by Plaintiffs' own admission, they "felt the brunt of the harm" in Maine, and Maine is "the focal point of the harm suffered." *Christie*, 258 F. Supp. 3d at 500 (citation omitted). Further, Plaintiffs' allegations clarify that Defendants' conduct connects them to Maine "in a meaningful way" because Sharma allegedly made multiple misrepresentations to Holden, a Maine government official, and sent false documents to Maine officials. *See Walden*, 571 U.S. at 290. Said another way, taking Plaintiffs' allegations as true, although Defendants would have known the harm caused to Plaintiffs in Maine, they would not have known about any harm caused in New Jersey. *See Kettering Adventist Healthcare*, 2021 WL 4844082, at *5 (finding specific jurisdiction for intentional tort claims in state where N95 mask suppliers allegedly sent "fabricated documents and counterfeit masks"). Plaintiffs' Complaint thus

fails to allege how New Jersey relates to their fraud or tortious interference claims.[3] The Court therefore declines to exercise personal jurisdiction over those claims.

**B.    The Court Declines to Order Jurisdictional Discovery.**

In the alternative, Plaintiffs request that this Court order jurisdictional discovery so that Plaintiffs may supplement their jurisdictional allegations. (*See* Pls.' Opp'n Br. 9-10.) The decision to order jurisdictional discovery lies within the Court's sound discretion. *See Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362-63 (3d Cir. 1983). To that end, jurisdictional discovery "should be sustained when factual allegations suggest the possible existence of requisite contacts between the defendant and the forum state with 'reasonable particularity.'" *Senju Pharm. Co. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 435 (D.N.J. 2015) (quoting *Mellon Bank*, 960 F.2d at 1223). As stated above, but for one warehouse in New Jersey (which Defendants did not ship to), Plaintiffs' Complaint alleges zero facts relating their claims to Defendants' conduct. Thus, the Court will not exercise its discretion to order jurisdictional discovery.

**C.    The Court Lacks Personal Jurisdiction to Hear Defendants' Motion to Dismiss for Failure to State a Claim.**

Because the Court holds that it lacks personal jurisdiction over Defendants, it cannot entertain Defendants' Motion to Dismiss under Rule 12(b)(6). *See Lightfoot*, 137 S. Ct. at 562.

---

[3] The Court notes that its analysis of the unjust enrichment claim also applies to its analysis of Plaintiffs' intentional tort claims. *See Miller v. Adler*, No. 17-7149, 2018 WL 3201791, at *3 (D.N.J. June 29, 2018) ("The [plaintiffs'] claims of breach of contract and unjust enrichment, which are not intentional torts, are subject to the traditional specific jurisdiction test, rather than the *Calder* effects test; however, the Court's finding of specific personal jurisdiction under the traditional test extends also to the intentional tort claims arising out of the transaction.").

## IV. CONCLUSION

The Court lacks personal jurisdiction over Defendants and declines to order jurisdictional discovery. The Court will issue an order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE