**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EFOFEX, INC., *et al.*,

        Plaintiffs,

        v.

REALHUB INC. *et al.*,

        Defendants.

Civil Action No. 21-8454 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on Defendants Datta Holdings, LLC ("Datta") and Sarange Sam Sharma's ("Sharma," and, together with Datta, "Defendants") Motion to Dismiss Plaintiffs Efofex, Inc. ("Efofex") and Textrade Inc.'s ("Textrade," and together with Efofex, "Plaintiffs") Amended Complaint. (ECF No. 21.) Plaintiffs opposed (ECF No. 26), and Defendants did not reply. Thereafter, in July 2022, the Court issued an order ("the July Order") granting limited jurisdictional discovery. (*See generally* July Order, ECF No. 27.) The parties subsequently filed a flurry of correspondence based on this jurisdictional discovery. (ECF Nos. 28-31.) The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants Defendants' Motion.

I.   **BACKGROUND**[1]

This matter arises out of the widely publicized rash of counterfeit 3M N95 masks manufactured during the COVID-19 pandemic. Throughout the latter half of 2020, Efofex agreed to provide the State of Maine with a number of masks, contracting with Defendant Realhub Inc. ("Realhub") to purchase masks and fulfill that order. (*See* Am. Compl. ¶¶ 19-24.) Efofex placed and paid for the orders, yet Realhub would deliver the masks to a warehouse in Dayton, New Jersey, operated by Textrade. (*Id.* ¶¶ 24, 26 29, 41, 45-47.) To fulfill Efofex's purchase orders, Realhub worked with Defendant Aster Impact ("Aster"), which connected Realhub with Datta, an importer of 3M N95 masks. (*Id.* ¶¶ 5, 63.) According to Plaintiffs, however, Realhub did not meet its contractual obligations to deliver the promised number of 3M N95 masks to the New Jersey warehouse by December 2020. (*Id.* ¶¶ 43-45, 49.) Plaintiffs also allege that Realhub delivered counterfeit masks. (*Id.* ¶¶ 51-59.)

In April 2021, Plaintiffs sued Realhub, Datta, Aster, and their associated principals. (*See generally* Compl., ECF No. 1.) As to Defendants Datta and Sharma, Plaintiffs' original Complaint asserted claims for fraud, unjust enrichment, and tortious interference with economic advantage. (*See id.*) Defendants moved to dismiss the original Complaint for lack of personal jurisdiction over them under Federal Rule of Civil Procedure 12(b)(2)[2] and for failure to state actionable fraud and unjust enrichment claims under Rule 12(b)(6). (*See* Defs.' First Moving Br., ECF No. 12-1.) In the November Opinion, the Court granted Defendants' First Motion to Dismiss for lack of personal

---

[1] The Court adopts the factual background as recited in its November 22, 2021, Memorandum Opinion (the "November Opinion," ECF No. 18) and only provides additional background and procedural information where relevant for the instant Motion. For the purpose of considering the instant Motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

jurisdiction over any claim. (Nov. Op. 7.) The Court also granted leave for Plaintiffs to refile an amended complaint. (*See generally* Nov. Order, ECF No. 19.)

In December 2021, Plaintiffs filed the Amended Complaint. (*See generally* Am. Compl., ECF No. 20.) The Amended Complaint alleges, among other allegations against separate defendants, fraud (Count II); unjust enrichment (Count III); and tortious interference (Count IV) against Defendants. (*Id.*) Defendants filed the instant Motion to Dismiss, again for lack of personal jurisdiction and failure to state a claim. (*See generally* Defs.' Moving Br., ECF No. 21-1.) Plaintiffs opposed (ECF No. 26), and Defendants did not reply.

Later, upon review of the Amended Complaint, the Court issued the July Order. There, the Court expressed its skepticism that the new allegations established personal jurisdiction but found that the new allegations warranted limited jurisdictional discovery. (*See* July Order 4.) The Court administratively terminated and held in abeyance the Motion to Dismiss pending the conclusion of jurisdictional discovery. (*Id.*)

This jurisdictional discovery concluded in August 2022, and so began the parties' flurry of correspondence on the meaning of said discovery. (*See* ECF Nos. 28-31.) With the parties' correspondence in mind, as well as the parties' briefing on the Motion to Dismiss the Amended Complaint (with its accompanying exhibits), the Court turns to the Motion to Dismiss.[3]

---

[3] The Third Circuit has previously recognized that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993) (internal citations omitted). Here, the Court finds that Plaintiffs' jurisdictional claims are based on the exhibits attached to the Amended Complaint, and their authenticity does not appear to be contested. Accordingly, the Court takes judicial notice of these exhibits. Moreover, "a court may take judicial notice of public records." *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 324-25 (D.N.J. 2013) (quoting *Grynberg v. Total Compagnie Francaise Des Petroles*, 891 F. Supp. 2d 663, 675 (D. Del. 2012)). The Court, accordingly, takes judicial notice of the post-jurisdictional discovery correspondences filed by the parties in deciding the instant Motion. (*See* ECF Nos. 28-31.)

## II.  LEGAL STANDARD

### A.  Rule 12(b)(2)

Under Rule 12(b)(2), a defendant may move to dismiss an action for lack of personal jurisdiction. "[O]nce a defendant has raised a jurisdictional defense, the plaintiff must prov[e] by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (second alteration in original) (internal quotation marks and citations omitted). In a diversity action, a New Jersey federal court "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citations omitted). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." *Id.* (citation omitted).

A federal district court may exercise two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 & n.9 (1984)). General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "The 'paradigm' forums in which a corporate defendant is 'at home' are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler*, 571 U.S. at 137). Specific jurisdiction allows a court to exercise jurisdiction over a non-resident defendant where: (1) the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum"; (2) the litigation "aris[es] out of or relate[s] to the defendant's contacts with the forum"; and (3) the exercise of

4

jurisdiction "does not offend traditional notions of fair play and substantial justice." *Goodyear*, 564 U.S. at 923-24 (alterations in original) (citations omitted).

When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales*, 384 F.3d at 97 (citations omitted). Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable. *See Mellon Bank (East) PSFS v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

**B.     Rule 12(b)(6)**

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III. DISCUSSION

The Court begins, once more, by assessing whether it has personal jurisdiction over Defendants. *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017) ("A court must have . . . power over the parties before it (personal jurisdiction) before it can resolve a case." (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-85 (1999)). Neither party argues the Court may exercise general jurisdiction over Defendants, so the Court again focuses exclusively on whether it has specific jurisdiction.

#### A. The Court Lacks Personal Jurisdiction Over Defendants.

To assert specific personal jurisdiction, Plaintiffs must allege "claim-specific jurisdiction over Defendants," meaning "an affiliatio[n] between the forum and the underlying controversy." *Christie v. Nat'l Inst. for Newman Stud.*, 258 F. Supp. 3d 494, 499 (D.N.J. 2017) (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)). Plaintiffs allege a quasi-contractual claim—unjust enrichment—and two tort claims, fraud and tortious interference, against Defendants. Because specific jurisdiction analysis is claim-specific, the Court analyzes the contract and tort claims separately. *See Remick v. Manfredy*, 238 F.3d 248, 256-60 (3d Cir. 2001).

Both claims have different analyses. For claims like unjust enrichment, courts employ the traditional three-part test for specific jurisdiction outlined below:

> First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice.

6

*Harrison v. Nerveda, LLC*, No. 15-1373, 2015 WL 5138478, at *4 (D.N.J. Aug. 31, 2015) (first quoting *HS Real Co., LLC v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013); then citing *O'Connor*, 496 F.3d at 317). Notably, the first prong is a threshold inquiry, and the Court need not consider the third prong if the first two prongs are unmet. *See Bit Holdings Fifty-One, Inc. v. Ultimate Franchises, Inc.*, No. 18-11010, 2019 WL 2296052, at *4 (D.N.J. May 30, 2019) (citation omitted). For intentional tort claims like fraud and tortious interference, the Court employs the so-called "*Calder* effects test," which stems from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 788 (1984). *See Christie*, 258 F. Supp. 3d at 500. That test requires a plaintiff to allege:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; [and]
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity . . . .

*Id.* (quoting *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998)). Further, the Supreme Court has clarified that for the second and third prongs of the *Calder* effects test, the inquiry must focus on "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

With the proper standards in place, the Court analyzes Plaintiffs' unjust enrichment and intentional tort claims. The Court concludes, once more, that it cannot exercise personal jurisdiction over Defendants for any claim.

### 1. Unjust Enrichment Claim

Regarding Plaintiffs' unjust enrichment claim, the Court finds, as in the November Opinion, that Plaintiffs have still not met their burden under the first prong of the test—purposeful availment. Purposeful availment requires allegations that Defendants "purposefully directed their

7

activity" at New Jersey. *Christie*, 258 F. Supp. 3d at 500 (alteration and citation omitted). In addition, because Plaintiffs' unjust enrichment claim stems from Realhub's breach of contract, the Court considers "'prior negotiations' and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Harrison*, 2015 WL 5138478, at *5 (quoting *Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 168 (3d Cir. 2012)). In the November Opinion, when explaining the Complaint's failure to show that either Datta or Sharma purposefully directed activity to New Jersey, the Court explained that the Complaint did not "allege that Datta or Sharma contracted with Textrade—the only New Jersey-based party in this litigation—or even knew about Textrade's existence." (Nov. Op. 7.) Similarly, the November Opinion pointed out the Complaint's failure to allege that Datta supplied masks directly to Textrade. (*Id.* at 7-8.) The November Opinion explained that Datta supplied masks to Realhub, which then shipped those masks to New Jersey. (*Id.*) And none of the exhibits showed a "course of dealings" between Plaintiffs and Defendants. (*Id.* at 8.)

With the benefit of jurisdictional discovery, the Court now reaches the same conclusion. In their various items of post-jurisdictional discovery correspondence, Plaintiffs contend that Datta did, indeed, "send the masks in question directly to New Jersey," shipping "those masks to the specific location of Textrade's New Jersey warehouse." (Pls.' Aug. 22, 2022, Letter 2, ECF No. 28 (emphasis removed).) Plaintiffs further contend that Datta controlled the process of this shipping "every step of the way." (*Id.*) While Plaintiffs acknowledge that, according to Sharma, the masks were physically transported to the Textrade warehouse in New Jersey by a company called "PHD Logistics Co." ("PHD"), Plaintiffs point to Sharma's testimony that he directed PHD. (*Id.*)

The documents attached to this correspondence do support the existence of some kind of relationship between Sharma and New Jersey, which is more than Plaintiffs managed to demonstrate before. For instance, in one e-mail message sent by Sharma to someone at PHD, Sharma asked PHD to prepare a bill of lading or the shipment of masks to a Textrade warehouse in New Jersey. (*Id.* at 2.) Admissions by Sharma that he would "strategize the entire [shipping] route" and "coordinate" shipping details further show that Sharma was aware of, and at least somewhat involved in, a singular shipment of masks to New Jersey. Thus, Plaintiffs succeed in showing that Sharma, at least, knew about Textrade's existence.[4]

But that is about all that Plaintiffs manage to show. There is still no contract alleged, for example, between Datta or Sharma and Textrade. And by Plaintiffs' own admission, Defendants did not physically transport the masks to Textrade. Indeed, the other documents Plaintiffs reveal do nothing more than demonstrate a relationship between Sharma and PHD, or between Sharma and Aster. And it is not enough for "purposeful availment" that PHD, even if directed by Sharma, had contacts with New Jersey, for it appears, by all accounts, that Aster ultimately directed those contacts. As previewed, Plaintiffs focus on Sharma's request to someone at PHD for a bill of lading between PHD and the Textrade warehouse in Dayton, New Jersey as evidence of Sharma's directing of activity at New Jersey. (Pls.' Aug. 22, 2022, Letter 2-4.) But the corresponding e-mail message reveals only that Sharma asked someone at PHD to prepare the bill of lading for someone named "Pradeep" at the Textrade warehouse, and the e-mail message makes clear that the contact person for this whole transaction was Leah Zveglich ("Zveglich") at Aster. (*Id.* at *5; *see also* Am. Compl. 62 (Plaintiffs confirming that Zveglich of Aster was on the conference call between

---

[4] As an initial matter, Sharma's contacts with New Jersey alone cannot be imputed to demonstrate Datta's own contacts. *See Waste Management v. Admiral Ins. Co.*, 138 N.J. 106, 127 (1994) ("[J]urisdiction over one defendant may not be based on the activities of another defendant[.]").

Plaintiffs and Defendants).)[5] The bill of lading itself is between PHD and Datta, with Zveglich explicitly named as a customer. (Pls.' Aug. 22, 2022, Letter *7-*8.)

These documents demonstrate, if anything, an even more attenuated relationship between Defendants and Plaintiffs, showing that Aster directed Defendants' activity with respect to New Jersey and confirming that Defendants did not directly communicate with Plaintiffs either to physically ship or contract to ship the masks at issue to New Jersey. (*See* Defs.' Aug. 28, 2022, Letter 3, ECF No. 30 (Defendants contending that Datta "followed the instructions and direction given to it from its customer, Aster ... , and its principal, ... Zveglich.").) Yet even the sum of these details produced in discovery fail to compensate for the fact that the "purposefully directed" contacts must "arise out of contacts that the 'defendant *himself*' creates with the forum." *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 475 (1985)). Plaintiffs fail to prove as much, despite their conclusory statement that Defendants could have pulled out of any sort of business relationship upon learning that the masks would be shipped to New Jersey. (*See* Pls.' Aug. 29, 2022, Letter 1, ECF No. 31.)

Additionally, Plaintiffs make much of *Kettering Adventist Healthcare v. Jade Designs, LLC*, No. 21-136, 2021 WL 4844082 (S.D. Ohio Oct. 18, 2021), which the Court cited in the November Opinion. (*See* Nov. Op. 8.) There, the court found purposeful availment where an N95 mask supplier sent only one shipment of purportedly fraudulent masks to the forum state, but had multiple communications with an N95 mask buyer and "actively sought to establish a connection with [an N95 mask buyer] that would be more than a 'one-shot affair.'" *Kettering Adventist Healthcare, LLC*, 2021 WL 4844082, at *5 (citation omitted). As both parties acknowledge, however, the facts of *Kettering* are unclear: The "[c]omplaint in that matter does not specify if the

---

[5] Page numbers preceded by an asterisk refer to the page numbers atop the ECF header.

10

defendant there delivered the masks or if a vendor delivered the masks." (Pls.' Aug. 22, 2022, Letter 3; *see* Defs.' Aug. 28, 2022, Letter 4.) What is clear, at the very least, is that the mask supplier in that case had a contract with the mask buyer to deliver masks to the forum state, and that the transaction between the two for the shipment of masks ultimately resulted in a future contract. *See Kettering Adventist Healthcare, LLC*, 2021 WL 4844082, at *5 ("Defendants further argue that their contract with [a mask buyer] alone is insufficient to establish specific jurisdiction."), ("Defendants were ultimately successful in obtaining another contract for masks with [the mask buyer]."). Here, no similar contract exists between Defendants and Textrade, nor is there evidence that Defendants "deliberately reached out beyond [their] home." *See id.* at *4 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021)); *but see NII Brokerage, L.L.C. v. Roadway Exp., Inc.*, No. 07-5125, 2008 WL 2810160, at *5 (D.N.J. July 18, 2008) (granting a shipper of goods' motion to dismiss for lack of personal jurisdiction where the shipper was not in privity with the plaintiff but rather, was only responsible for the transportation of the goods, despite the shipper's relationship with a trucking company.)

In any event, even if the above communications were enough to show Defendants (or at least, Sharma) directed their activity at New Jersey, the Court finds that the exercise of jurisdiction here, where there is only one New-Jersey based party and the majority of the conduct is out of state and concerns out-of-state actors, would offend "traditional notions of fair play and substantial justice." *See Goodyear*, 564 U.S. at 923-24; *Marchionda v. Embassy Suites, Inc.*, 122 F. Supp. 3d 208, 211 (D.N.J. 2015) (expressing doubts over the exercise of personal jurisdiction where the action "appears to stem entirely from out-of-state conduct of seemingly out-of-state entities"); (July Order 3 (similar).) This point remains true even with Plaintiffs' generic, added allegation that all of the defendants in this case transact business in New Jersey. (*See* Am. Compl. ¶ 10.) As a

policy matter, a different conclusion would render any entity in a supply chain subject to personal jurisdiction in New Jersey if that were the final destination of goods, and someone related to that entity was aware of that fact; or if others in the supply chain conducted business in New Jersey at various other points in time. The Court thus declines to exercise personal jurisdiction over Defendants for the unjust enrichment claim.

### 2. *Intentional Tort Claims*

The Court, perhaps unsurprisingly, reaches the same conclusion regarding Plaintiffs' intentional tort claims. Neither the Amended Complaint, nor the correspondence submitted by Plaintiffs, sufficiently allege any torts targeting New Jersey. As already previewed by the Court, the most these submissions reveal are that Defendants allegedly lied to Maine regulators on a phone call that involved Textrade, and that Sharma hoped to do business again with everyone on the line. (*See* July Order 3 (citing Am. Compl. ¶¶ 65-67).) And in the post-jurisdictional discovery correspondence, the most Plaintiffs do is point to testimony from Sharma that he was aware that Pradeep from Textrade was on that phone call, which Plaintiffs note occurred after Sharma had already learned that Pradeep was in charge of the Textrade warehouse in Dayton, New Jersey. (Pls.' Aug. 22, 2022, Letter 3.) These facts, Plaintiffs contend, suggest Sharma was aware that any fraudulent statements he made at that time would have an effect in New Jersey. (*Id.*) The Court is hard-pressed to believe, however, that an e-mail message from Sharma to PHD which listed the shipping address of one shipment of masks to Pradeep, and the subsequent phone call that included Pradeep, amount to Defendants "expressly aim[ing]" their alleged tortious conduct at New Jersey. *See Christie*, 258 F. Supp. 3d at 500. Similarly, Plaintiffs' contention that "Textrade will face the financial impact of its damaged relationship with the State of Maine here in New Jersey" seems like a stretch; in the same sentence, Plaintiffs acknowledge that "some of the masks were ultimately forwarded to Maine," which again, appears to bear the brunt of the alleged harm. (*See* Pls.' Opp'n

Br. 13, ECF No. 26.) Plaintiffs' Amended Complaint, and related correspondence, thus fail to allege how New Jersey relates to their fraud or tortious interference claims.[6] The Court therefore declines to exercise personal jurisdiction over those claims.

### B. The Court Lacks Personal Jurisdiction to Hear Defendants' Motion to Dismiss for Failure to State a Claim.

Because the Court holds that it lacks personal jurisdiction over Defendants, it cannot entertain Defendants' Motion to Dismiss under Rule 12(b)(6). *See Lightfoot*, 137 S. Ct. at 562.

### IV. <u>CONCLUSION</u>

The Court lacks personal jurisdiction over Defendants. The Court will issue an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that its analysis of the unjust enrichment claim also applies to its analysis of Plaintiffs' intentional tort claims. *See Miller v. Adler*, No. 17-7149, 2018 WL 3201791, at *3 (D.N.J. June 29, 2018) ("The [plaintiffs'] claims of breach of contract and unjust enrichment, which are not intentional torts, are subject to the traditional specific jurisdiction test, rather than the *Calder* effects test; however, the Court's finding of specific personal jurisdiction under the traditional test extends also to the intentional tort claims arising out of the transaction.").