<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

EFOFEX, INC., *et al.*,

    Plaintiffs,

v.

REALHUB, INC., *et al.*,

    Defendants.

Civil Action No. 21-8454 (MAS) (TJB)

**MEMORANDUM OPINION**

<u>**SHIPP, District Judge**</u>

  This matter comes before the Court upon Plaintiffs Efofex, Inc. ("Efofex") and Textrade, Inc.'s ("Textrade," and collectively with Efofex, "Plaintiffs") unopposed Motion for Default Judgment against Defendant Realhub, Inc., d/b/a American Devices ("Realhub"). (ECF No. 64.) After careful consideration of Plaintiffs' submission, the Court decides the matter without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiffs' Motion for Default Judgment is granted.

**I.  BACKGROUND**

  **A.  Factual Background[1]**

  Plaintiffs are two New York companies that sought to provide 3M N95 1860 masks to the State of Maine. (Am. Compl. ¶¶ 1-2, 22-23, ECF No. 20.) The State of Maine issued two purchase

---

[1] For the purposes of this unopposed default judgment motion, "'the factual allegations of the [C]omplaint, except those relating to the amount of damages, will be taken as true.'" *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).

orders to Textrade for the purchase of these masks: (1) an initial order for "25,000 certified 3M N95 1860 masks" for a total of $106,250.00 (the "First State of Maine Purchase Order"); and (2) a follow-up order for "1,000,000 3M N95 1860 certified masks" for a total of $3,150,000.00, "with delivery of the first 650,000 masks to take place by [December 15, 2020], and the balance of 350,000 to be delivered by [December 21, 2020]" (the "Second State of Maine Purchase Order"). (*Id.* ¶¶ 22, 28; Ex. A to Am. Compl., ECF No. 20-1.) To fulfill these orders, "Plaintiffs agreed that Textrade would order the required certified masks from Realhub, and then transfer same to Efofex, who would then provide [the] same to the State of Maine." (Am. Compl. ¶¶ 22-23.)

After securing the bid for the First State of Maine Purchase Order, on October 9, 2020, Efofex issued a first purchase order to Realhub for "25,000 3M [N95] 1860 masks at $3.90 per unit, for a total price of $97,500.00" (the "P.O. 1001"). (*Id.* ¶ 24.) The P.O. 1001 required that the masks "meet 3M standard spec[ifications]" and be delivered to "Efofex, Inc. C/o Textrade Inc[.]" in Dayton, New Jersey. (*Id.* ¶¶ 25-26.) Realhub subsequently issued an invoice for P.O. 1001. (*Id.* ¶ 27.) On or about December 10, 2020, following the issuance of the Second State of Maine Purchase Order, Efofex issued a second purchase order to Realhub for "1,000,000 N95 3M 1860 masks at $2.88 per unit for a total purchase price of $2,880,000.00" (the "P.O. 1005"). (*Id.* ¶¶ 28-29.) The P.O. 1005 likewise required that the masks meet 3M standard specifications and be delivered to the same New Jersey address as P.O. 1001. (*Id.* ¶¶ 30, 32.) Additionally, P.O. 1005 included terms that "TIME IS OF THE ESSENCE FOR ALL ORDERS" and "[a]ny portion of the product not available for dispatch . . . by [December 14, 2020] will stand cancelled." (*Id.* ¶¶ 33-34.) Realhub issued an invoice for P.O. 1005. (*Id.* ¶ 39.)

On December 14, 2020, Efofex paid Realhub $1,872,000.00 in connection with the invoice issued for P.O. 1005. (*Id.* ¶ 44.) A shipment of 350,640 masks was eventually shipped and delivered

to Plaintiffs' New Jersey location on January 6, 2021. (*Id.* ¶¶ 45-48.) Then, on February 4, 2021, Efofex received another 99,940 masks from Realhub at the New Jersey location. (*Id.* ¶ 49.) As of early February 2021, Efofex had only received a total of 450,580 certified 3M masks. (*Id.* ¶ 50.) Despite Efofex making full payment pursuant to P.O. 1005, Realhub failed to meet the specified delivery deadlines and did not deliver the contracted-to number of masks. (*Id.* ¶¶ 50-52.)

On February 3, 2021, 3M issued a "Safety Notice" identifying lot numbers of masks that may not be authentic 3M masks because they "were not purchased from an authorized 3M dealer [and] '. . . are counterfeit and should not be used.'" (*Id.* ¶¶ 53-54 (alteration in original).) All of the masks Realhub delivered to Efofex had a lot number that was identified in 3M's Safety Notice as being likely counterfeit. (*Id.* ¶¶ 53-56.) The State of Maine became aware of the Safety Notice and reached out to Plaintiffs, which prompted Plaintiffs to initiate an investigation over the authenticity of the masks Realhub supplied. (*Id.* ¶¶ 57-62.) To determine whether the supplied masks were genuine, Plaintiffs convened a conference call that included, among others, a representative from the State of Maine and Realhub representatives. (*Id.* ¶¶ 62-63.) The State of Maine asked for documentation confirming that the masks supplied by Realhub were obtained from an authorized 3M distributor. (*Id.* ¶¶ 69-71.) A few weeks later, one of Realhub's representatives admitted that the masks did not come "from a direct 3M source" and another of Realhub's representatives stated that Realhub was "working very diligently to resolve the pending issues." (*Id.* ¶¶ 78-79.)

To date, adequate documentation about the 3M supplier and the authenticity of the masks has not been provided and the issues have not been resolved by Realhub or the other Defendants. (*Id.* ¶¶ 72-76, 80.) On February 10, 2021, Plaintiffs demanded that Realhub "refund a total of $887,156.80 ($574,329.60 for the undelivered masks, $287,827.20 for the 99,940 masks which

were delivered to New Jersey, but which Maine rejected before shipment, and $25,000.00 against the first shipment of 25,000 masks)." (*Id.* ¶ 77.) Although Realhub agreed to refund Efofex for the 199,420 masks which it failed to provide in the amount of $574,329.60, as well as for the 99,940 masks being held in the New Jersey warehouse, Realhub has failed to make the promised refunds or pick up the inventory being held at the warehouse. (*Id.* ¶¶ 85-89.)

In March 2021, 3M officially took the position that the masks in question "are fake" which prompted the State of Maine to terminate its purchase orders with Textrade and demand reimbursement in the amount of $1,681,590.00. (*Id.* ¶¶ 81-82.)

B.  **Procedural Background**

On April 6, 2021, Plaintiffs initially filed suit. (*See generally* Compl., ECF No. 1.) On December 21, 2021, Plaintiffs filed the operative Amended Complaint (the "Amended Complaint") which alleges a total of four counts, three of which are asserted against Realhub: breach of contract ("Count One"); (2) fraud ("Count Two"); and (3) tortious interference with prospective economic advantage ("Count Four").[2] (*See generally* Am. Compl.)

On January 11, 2022, Realhub, Chainani, and Nautiyal (collectively, "Realhub Defendants") filed an Answer (the "Answer") to the Amended Complaint.[3] (*See generally* Answer, ECF No. 22.) When the Realhub Defendants filed their Answer, Michael Laffey, Esq. (local counsel) ("Laffey"), and Michael Whitticar, Esq. (out-of-state counsel) ("Whitticar") represented

---

[2] Plaintiffs named other defendants, including two Realhub representatives: (1) Steven Sudhir Chainani ("Chainani"); and (2) Rajesh Nautiyal ("Nautiyal"). (*See generally* Am. Compl.) Plaintiffs also alleged Counts Two and Four against Chainani and Nautiyal. (*See id.* ¶¶ 99-115, 126-34.) Count Three for unjust enrichment was not alleged as to Realhub or the Realhub representatives. (*Id.* ¶¶ 116-25.)

[3] Realhub also asserted a cross-claim against Defendant Aster Impact, Incorporated, and a third-party complaint against Leah Zveglich. (*See* Cross-Claim & Third Party Compl., ECF No. 22.)

4

all three Realhub Defendants.[4] (*See generally* Answer.) On or about February 13, 2024, Laffey withdrew as local counsel, citing retirement. (Notice of Withdrawal, ECF No. 44.) At this point, Whitticar, an attorney unauthorized to practice law in the District of New Jersey, remained as the Realhub Defendants' sole counsel. On March 11, 2024, the Court issued a text order requiring the Realhub Defendants to provide an update on efforts to secure new local counsel by March 21, 2024. (Mar. 11, 2024 Text Order, ECF No. 46.)

On March 20, 2024, Whitticar submitted a report on his efforts to obtain local counsel on Realhub Defendants' behalf. (Mar. 20, 2024 Report, ECF No. 64-9.) In the report, Whitticar conveyed that: (1) he recommended replacement counsel to Realhub Defendants, but Realhub Defendants responded that they could not afford to pay the recommended candidate; (2) Realhub Defendants told Whitticar that they found their own candidate for local counsel, but the candidate lived and worked in California and was not otherwise admitted to practice before this Court; (3) he had serious concerns about whether it will be possible for Realhub Defendants to retain local counsel who is competent, experienced, acceptable, and admitted to practice before this Court for a lower rate than his recommended replacement; and (4) Realhub Defendants requested a forty-five day extension to find local counsel. (*Id.* ¶¶ 2-6.) On March 26, 2024, this Court provided Realhub Defendants an additional forty-five days to find local counsel. (Mar. 26, 2024 Text Order, ECF No. 47.)

On June 4, 2024, after a follow-up status conference with counsel, the Court ordered:

> Defendants will be afforded one final extension of time to retain local counsel. If local counsel has not entered an appearance by 7/19/2024, . . . default judgment may be entered against Defendant Real[h]ub, Inc. d/b/a American Devices. . . . If local counsel is not

---

[4] On November 21, 2023, the Court granted Whitticar's motion for leave to appear *pro hac vice* in this case. (*See generally* Order, ECF No. 43.)

5

>retained, pro hac counsel, Michael C. Whitticar, Esq., may submit a letter application to be relieved.

(June 4, 2024 Text Minute Entry.) On July 16, 2024, Whitticar filed a motion to withdraw as Realhub Defendants' counsel. (*See generally* Whitticar's Mot. to Withdraw, ECF No. 64-10.)

On August 7, 2024, the Court terminated Whitticar as Realhub Defendants' *pro hac vice* counsel, deemed Chainani and Nautiyal *pro se*, and stated that Realhub is not permitted to proceed *pro se* as a corporate entity. (Letter Order, ECF No. 50.) Given that Realhub could not proceed *pro se*, the Court ordered the Clerk of the Court to enter default against Realhub. (*Id.*) The same day, the Clerk entered default against Realhub. (Entry of Default, ECF No. 51.) To date, Realhub has not moved to vacate the entry of default.

On March 7, 2025, Plaintiffs filed the subject Motion for Default Judgment requesting that the Court enter default judgment against Realhub. (Mot. for Default J., ECF No. 64.) Realhub did not oppose the Motion for Default Judgment.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55[5] allows for a party to apply for, and a court to enter, default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend" against the claims asserted against it. Fed. R. Civ. P. 55. The Third Circuit has held that the "or otherwise defend" clause in Rule 55(a) "is broader than the mere failure to plead." *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917 (3d Cir. 1992). As such, a default judgment may be imposed if a party has, *inter alia*, "fail[ed] to comply with [the Court's] unambiguous orders to obtain substitute counsel[.]" *Id.* at 918. Blatant disregard of court orders and other tactics to stall litigation may also constitute a failure to "otherwise defend" against the

---

[5] References hereafter to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

action for which an entry of default is appropriate. *See Bibbs v. Sec. Atl. Mortg. Co.*, No. 10-346, 2012 WL 3113975, at *3 (E.D. Pa. Aug. 1, 2012) ("Although [the defendant] answered plaintiff's complaint, its failure to participate in this action in any meaningful way since the withdrawal of [counsel] renders appropriate an entry of default as against it."); *MicroBilt Corp. v. Bail Integrity Sols., Inc.*, No. 19-637, 2024 WL 2301370, at *3 (D.N.J. May 21, 2024).

Entry of default judgment is left to the district court's discretion. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Because entry of default judgment does not resolve a plaintiff's claims on the merits, it is a disfavored remedy. *See Loc. 365 Pension Fund v. Kaplan Bros. Blue Flame Corp.*, No. 20-10536, 2021 WL 1976700, at *2 (D.N.J. May 18, 2021) (quoting *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984)). In order to enter default judgment under Rule 55(b), the Court must perform a thorough analysis of Plaintiffs' claims and entitlement to relief, analyzing whether: (1) Defendants were properly served; (2) the Court has jurisdiction over the matter; and (3) the Amended Complaint sufficiently states a cause of action. *See Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985); *Mark IV Transp. & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017); *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (quoting *DIRECTV, Inc. v. Asher*, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)). The Court must then weigh three factors in evaluating whether the entry of a default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied[;] (2) whether the defendant appears to have a litigable defense[;] and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *$55,518.05 in U.S. Currency*, 728 F.2d at 195); *Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015).

7

## III. DISCUSSION

The Court finds that: (1) entry of default was proper; (2) Plaintiffs have stated legitimate causes of action; and (3) the weighing of factors favors entry of a default judgment. The Court addresses each finding in turn.

### A. Clerk's Entry of Default

The Clerk of Court entered default at the direction of this Court's August 7, 2024 Order. (*See* Aug. 7, 2024 Letter Order.) This Court first warned Realhub of its legal requirement to obtain counsel over a year ago. (*See* Mar. 11, 2024 Text Order.) Moreover, after Realhub initially failed to retain counsel, this Court gave Realhub two more chances. (*See* Mar. 26, 2024 Text Order; June 4, 2024 Text Minute Entry.) Yet Realhub remains without legal counsel, effectively bringing this litigation to a halt. Considering that Realhub violated the Court's directives to retain counsel and knew the consequences of its conduct, the Court finds that the Clerk's default was appropriately entered. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."); *Wellness Publ'g v. Barefoot*, No. 02-3773, 2005 WL 8176410, at *1 (D.N.J. Nov. 16, 2005) ("As a threshold issue, default should be entered against corporate defendants . . . because they have failed to retain counsel. It is settled law in this Court that corporations cannot represent themselves *pro se*." (citation omitted)), *R&R adopted*, No. 02-3773, 2005 WL 8176411 (D.N.J. Dec. 9, 2005).

B.  **Default Judgment**

The Court must next determine whether it should grant Plaintiff's Motion for Default Judgment.[6] In doing so, the Court must consider whether Plaintiffs have stated a legitimate cause of action and whether the evaluation of the three factors favors entry of a default judgment.

1.  ***Count One: Breach of Contract***

Under New Jersey law, a breach of contract claim requires four elements: (1) "the parties entered into a contract containing certain terms"; (2) the plaintiff performed its contractual obligations; (3) the defendant breached the contract; and (4) the plaintiff suffered damages because of the defendant's breach. *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (quoting *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016)).

Here, Plaintiffs allege that they and Realhub entered into two agreements for purchases of 3M N95 1860 masks, the certain terms of which were memorialized in P.O. 1001 and P.O. 1005 and the subsequent invoices issued by Realhub. (Am. Compl. ¶¶ 24-27, 29-39, 91-93.) Specifically, Plaintiffs allege that "Realhub agreed to provide 675,000 authentic 3M [N95] 1860 masks which complied with the requirements set forth in P.O. 1001 and P.O. 1005 to Efofex in return for the total purchase price of $1,970,468.00." (*Id.* ¶ 91.) Efofex paid Realhub the full

---

[6] The Court finds that the initial service and jurisdiction inquiries are satisfied. Because Realhub has filed an Answer in this case and did not otherwise object to service, the service and personal jurisdiction prongs of the analysis are satisfied. *See First Guar. Mortg. Corp. v. Kirkpatrick-Brooks*, No. 18-14567, 2018 WL 6933416, at *2 (D.N.J. Dec. 14, 2018) ("Making an appearance in a case is the equivalent of process and service, and waives all objections to process or service, submitting the appearing defendant to such jurisdiction as the court is competent to exercise."), *R & R adopted*, No. 18-14567, 2019 WL 113723 (D.N.J. Jan. 3, 2019); *see also MicroBilt Corp.*, 2024 WL 2301370, at *5 (finding proper service where defendant had already appeared in the action and "at no point, objected to service of process"). Additionally, the Court has subject matter jurisdiction over the dispute pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, and complete diversity exists over the parties. (*See* Am. Compl. ¶¶ 1-9.)

purchase price of $1,970,468.00, thus fulfilling Plaintiffs' obligations pursuant to the agreements. (*Id.* ¶¶ 44, 92.) Plaintiffs allege that Realhub breached the agreements by: (1) failing to provide 3M masks which met the specification requirements set forth in the agreements; (2) failing to provide the masks in conformance with the delivery date specified in P.O. 1005; and (3) failing to provide or refund payment for approximately 200,000 masks that were never delivered. (*Id.* ¶¶ 94-96.) Plaintiffs, therefore, allege they have suffered damages as a result of Realhub's breach because Plaintiffs made full payment pursuant to the contract and continue to accrue costs for the storage of the counterfeit masks.[7] (*Id.* ¶¶ 87-89, 97-98.) The Court accordingly finds that Plaintiffs state a plausible claim for breach of contract.

### 2. Count Two: Fraud

A fraud claim has five elements: "(1) a material misrepresentation of an existing or prior fact[;] (2) the perpetrator's knowledge of the falsity[;] (3) an intent that the other party will rely on the misrepresentation[;] (4) reasonable reliance[;] and (5) damages." *D'Ottavio v. Slack Techs.*, No. 18-9082, 2022 WL 15442211, at *5 (D.N.J. Oct. 26, 2022) (citing *Liberty Mut. Ins. Co. v. Land*, 892 A.2d 1240, 1247 (N.J. 2006)). "Included within the first element are promises made without the intent to perform since they are material misrepresentations of the promisor's state of mind at the time of the promise." *IFMK Realty II, LLC v. Atl. Prop. Dev., LLC*, No. 20-6989, 2021 WL 12168082, at *2 (D.N.J. May 14, 2021) (quotation marks omitted) (quoting *Bell Atl. Network Servs., Inc. v. P.M. Video Corp.*, 730 A.2d 406, 417 (N.J. Super. Ct. App. Div. 1999)). To satisfy the heightened pleading standard of a fraud claim pursuant to Rule 9(b), plaintiffs "'must plead or allege the date, time[,] and place of the alleged fraud or otherwise inject precision or some measure

---

[7] Plaintiffs allege that Realhub has failed to pick up 99,940 masks that are currently being stored in Plaintiffs' New Jersey location. (Am. Compl. ¶ 97.)

of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (quoting *Federico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)); Fed. R. Civ. P. 9(b).

Here, Plaintiffs specifically allege that the Realhub Defendants on behalf of Realhub made multiple misrepresentations: (1) that "[3M N95] 1860 masks sold by Realhub to Efofex comported with the requirements as stated in P.O. 1001 and P.O. 1005" (Am. Compl. ¶ 100); (2) specifically that "[3M N95] 1860 masks sold by Realhub to Efofex met [the specification] requirements: 3M Healthcare Particulate Respirator and Surgical Masks N95 1860 – Adult/Universal Size; Packaging – 3M Standard Packaging; as per 3M standard specs and the accompanying 3M 1860 spec sheet which accompanied the P.O. 1001 and P.O. 1005" (*id.* ¶ 101); (3) that "the masks 'fully meet[] all 3M specifications and [are] hence genuine'" (*id.* ¶ 102 (alterations in original)); (4) that "Plaintiffs would receive a refund for the amounts paid for the undelivered masks (approximately 200,000), no later than February 24, 2020" (*id.* ¶ 103); (5) that "Realhub would deliver 650,000 masks by December 28, 2021" (*id.* ¶ 105); and (6) that "Realhub was working diligently to resolve the issues that arose following the issuance of the Safety Notice and assured Plaintiffs that these issues would be resolved" (*id.* ¶ 106). Plaintiffs attached communications demonstrating some of the purported misrepresentations to their Amended Complaint. (*See, e.g.*, Ex. L to Am. Compl., ECF No. 20-12 (Feb. 5, 2021 email from Realhub Defendant Chainani stating "[w]e believe that the Lot Numbers supplied are genuine. . . . The product fully meets all 3M specifications and is hence genuine.").)

Plaintiffs further allege that the Realhub Defendants on behalf of Realhub intended for Plaintiffs to rely upon these statements at the time they were made and made them knowing that the statements were false. (*Id.* ¶¶ 104, 107.) In fact, after making multiple statements regarding the supply, authenticity, and specification conformance of the supplied masks, Plaintiffs allege that Realhub Defendant Chainani "admitted that the masks at issue did not, in fact, come 'from a direct

11

3M source.'" (*Id.* ¶ 78.) Plaintiffs further allege that they relied upon those statements and as a result suffered damages. (*Id.* ¶ 115.) For example, on December 12, 2020, Realhub represented that it had spoken to 3M to obtain the masks (*see* Ex. G to Am. Compl., ECF No. 20-7), and Plaintiffs subsequently wired Realhub the money for the masks pursuant to the agreements on December 14, 2020 (Am. Compl. ¶ 44). The Court accordingly finds that Plaintiffs state a plausible claim for fraud.

### 3. *Count Four: Tortious Interference with Prospective Economic Advantage*

Under New Jersey law, a tortious interference claim requires four elements: "(1) a protected interest[;] (2) malice[;] (3) a reasonable likelihood that the interference caused the loss of the prospective gain[;] and (4) resulting damages." *Matrix Distribs., Inc. v. Nat'l Ass'n of Bds. of Pharmacy*, 34 F.4th 190, 200 (3d Cir. 2022) (quotation marks omitted) (quoting *Vosough v. Kierce*, 97 A.3d 1150, 1159 (N.J. Super. Ct. App. Div. 2014)). Malice requires that the "harm was inflicted intentionally and without justification or excuse." *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1170 (N.J. 2001) (citation omitted).

Here, Plaintiffs allege that they have "interests in prospective economic relations with the State of Maine." (Am. Compl. ¶¶ 129, 131.) Plaintiffs allege that Realhub acted intentionally and without justification in interfering with Plaintiffs' relationship with the State of Maine by "importing, selling[,] and/or providing goods which were not what they were represented to be by [Realhub]." (*Id.* ¶ 131.) Plaintiffs also specifically allege that Realhub was aware of Plaintiffs' agreements and prospective economic relations with the State of Maine by no later than February 2021, when the parties had a call with a representative from the State of Maine. (*Id.* ¶¶ 130-32.) Because of Realhub's failure to provide the masks as promised, failure to provide the documentation required to prove authenticity of the masks, and failure to provide Plaintiffs a

12

refund, Plaintiffs allege that Realhub tortiously interfered with their relations with the State of Maine and have suffered damages as a result. (*Id.* ¶¶ 133-34.) The Court accordingly finds that Plaintiffs state a plausible claim for tortious interference.

### 4.     *Entry of Default Judgment is Appropriate*

Next, the Court must review the relevant factors to determine whether the entry of a default judgment is appropriate. *Allaham*, 635 F. App'x at 36. *First*, the Court examines the prejudice Plaintiffs will endure absent default judgment. *See id.* Plaintiffs are clearly prejudiced here. Since Plaintiffs filed their suit over four years ago, Realhub has caused costly motion practice and prohibited Plaintiffs from pursuing their claim for damages. *See MicroBilt Corp. v. Bail Integrity Sols., Inc.*, No. 19-637, 2022 WL 2910462, at *4 (D.N.J. July 21, 2022) (noting that default judgment was the plaintiff's "only pathway to resolution" where the plaintiff bore the costs of motion practice after years in litigation and defendants failed to find new counsel); *Govinda v. Suntuity Solar Ltd. Liab. Co.*, No. 22-6964, 2025 WL 1260841, at *6 (D.N.J. May 1, 2025) (stating plaintiff is "prejudiced by [d]efendants' failure to obtain counsel as [plaintiff] cannot pursue her claim for damages"); *Newman v. Axiom Worldwide*, No. 06-5564, 2010 WL 2265227, at *5 (D.N.J. June 2, 2010) (articulating "plaintiffs will be prejudiced if default judgment is not granted because they will not be able to seek damages for their injuries due to defendant's continuing refusal to comply with [c]ourt orders"). Given the length of the delay and Realhub's refusal to comply with multiple Court Orders to find new counsel, Plaintiffs' only pathway to resolution of their claims against Realhub is through default judgment.

*Second*, the Court examines whether Realhub has a litigable defense. *Allaham*, 635 F. App'x at 36. Realhub's failure to obtain new counsel allows the Court to infer that it does not have a litigable defense. *See Aetrex Worldwide, Inc. v. Sourcing For You Ltd.*, No. 14-2504, 2019 WL

1349763, at *2 (D.N.J. Mar. 26, 2019) ("[G]iven that [d]efendants have failed to retain counsel, the Court finds no basis for [d]efendants to claim a meritorious defense."); *CHNJ Invs., LLC v. Koger*, No. 12-1467, 2014 WL 12656721, at *1 (D.N.J. Jan. 21, 2014) (stating corporate defendant "failed to obtain new counsel despite ample notice and opportunity and, thus, it has failed to defend itself"). Further, Realhub's boiler-plate defenses asserted in its Answer (*see generally* Answer) do not establish a meritorious defense under this prong of the analysis. *See Govinda*, 2025 WL 1260841, at *5 ("A defendant may not establish a meritorious defense with simple denials or conclusory statements[.]" (citation omitted)). "Thus, even though [Realhub's] Answer[] raise[s] multiple conclusory affirmative defenses, 'that is not sufficient to avoid default judgment[.]'" *Id.* (quoting *Trs.s of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Danco Painting, LLC*, No. 17-5739, 2021 WL 367353, at *4 (D.N.J. Aug. 19, 2021)).

*Third*, the Court examines whether defendant's delay is due to culpable conduct. *Allaham*, 635 F. App'x at 36. Notwithstanding this Court's extensions and both Whitticar's and the Court's repeated warnings, Realhub continues to defy the Court's Orders. (*See* Mar. 20, 2024 Report; Whitticar's Mot. to Withdraw; Mar. 11, 2024 Text Order; Mar. 20, 2024 Text Order; June 4, 2024 Text Minute Entry); *Price Home Grp. v. Ritz-Craft Corp. of Pa.*, No. 16-668, 2017 WL 5191807, at *4 (D.N.J. Nov. 8, 2017) (finding that "it is clear that [the defendant]'s conduct in this matter is culpable" given the corporate defendant's failure to retain counsel despite the court's order and warnings). Considering these warnings, Realhub's inaction "can only be deemed willful and intentional." *Id.*; *F.T.C. v. Fax Corp. of Am.*, No. 90-983, 1990 WL 180271, at *3 (D.N.J. Oct. 15, 1990) ("[W]illfulness and bad faith include acts intentionally designed to avoid compliance with court notices." (quoting *Hritz*, 732 F.2d at 1183)); *MicroBilt Corp.*, 2022 WL 2910462, at *4 ("[The defendant] is directly responsible for the delay in this matter" as it continued to ignore the court's

14

order to obtain counsel.). Realhub offers no explanation as to why it has failed to retain new counsel to date. As such, there is no justification for this delay.

Accordingly, the Court finds that the entry of default judgment against Realhub is appropriate.

### C. Damages

Finding default judgment warranted, the Court turns to damages, which Plaintiffs must still prove. *See Comdyne I*, 908 F.2d at 1149 ("A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (internal quotation marks and citation omitted)). "While a court may conduct a hearing to determine the amount of damages pursuant to Rule 55(b), a hearing may not be necessary 'so long as [the Court] ensures that there is a basis for the damages specified in the default judgment.'" *Govinda*, 2025 WL 1260841, at *6 (alteration in original) (quoting *Paniagua Grp. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 605 (D.N.J. 2016)).

Here, Plaintiffs request "that this Court enter default judgment against Realhub in the amount of $2,361,828.05, plus such amounts of pre-judgment interest and attorneys' fees which continue to accrue." (Pls.' Moving Br. 9, ECF No. 64-1.) Plaintiffs, however, do not explain or direct this Court to the appropriate documentation to support this claim for damages, including which part of the total sum relates to the already-calculated pre-judgment interest or the claims themselves. (*See id.* at 8-9.) Plaintiffs further ask for additional pre-judgment interest and attorneys' fees that continue to accrue, but do not provide any evidence for the Court to determine that amount at this time. (*See id.*) This Court, accordingly, shall refer the matter to Magistrate Judge Tonianne J. Bongiovanni to determine damages. Plaintiffs may submit supplemental briefing as to damages against Realhub, detailing each component of the requested damages award.

In doing so, Plaintiffs should specify the precise category of damages they seek and provide citations to supporting evidence. If necessary, the Court will subsequently schedule a hearing on the issue of damages.

## IV.     CONCLUSION

For the reasons set forth above, the Court grants Plaintiffs' Motion for Default Judgment against Realhub. This Court shall refer the matter to Magistrate Judge Tonianne J. Bongiovanni to determine damages. Plaintiffs may submit supplemental briefing as to damages against Realhub for Judge Bongiovanni's consideration. An order consistent with this Memorandum Opinion will follow.

Dated: October 9th, 2025

                                                                                    /s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE